**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TERRY PARNELL,** | ) | **CASE NO. 1:06 CV 0045** |
| | ) | **1:03 CR 248** |
| **Petitioner,** | ) | |
| | ) | |
| vs. | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **Respondent**. | ) | **AND ORDER** |

Before the Court is the Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed by *Pro Se* Petitioner Terry Parnell ("§ 2255 Motion") (**ECF No. 1**). For the reasons that follow, the Motion is **DENIED** and the case is summarily dismissed.

**I.**

On June 25, 2003, Parnell was charged in a three-count indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 1); possession with intent to distribute approximately .92 grams of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 2); and using and carrying a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). *Case 1:03CR248; ECF No. 1.*[1]

---

[1] Hereafter, all references to the record will be to the docket of Parnell's criminal case, No. 1:03 CR 248.

On September 1, 2004, pursuant to a written plea agreement with the Government, Parnell pled guilty to Count 1 (i.e., possession of a firearm by a convicted felon). *ECF No. 55* ("Plea Agreement"). In the Plea Agreement, Parnell stipulated to the following facts. On November 10, 2002, Cleveland police officers stopped the vehicle he was driving (a green Ford F150 pickup truck with two American flags on the tailgate), which vehicle matched the description of a vehicle reportedly used in an aggravated robbery just minutes earlier. *Id*. ¶ 4(A). When searching the vehicle, the officers found a Colt .45 Model New Service Revolver with Serial No. 3791, "visible and protruding between the two front seats of the truck." *Id*. Parnell admitted that, at the time he was apprehended, he was a convicted felon. He also admitted that he possessed .92 grams of heroin contained in 46 packets which were found inside his jacket lying on the front seat of the truck. *Id*. In exchange for Parnell's guilty plea to Count 1 of the indictment, the Government agreed to dismiss Counts 2 and 3 at sentencing. *Id*. ¶ 17.

Pursuant to the Plea Agreement, Parnell expressly acknowledged his understanding that the maximum penalty for having possessed a firearm was ten years of imprisonment followed by three years of supervised release. *Plea Agreement* ¶ 1. He also acknowledged his understanding that his prior record of three convictions for serious drug offenses invoked the penalty enhancement provisions of the Armed Career Criminal Act, 18 U.S.C. § 924(e), which carried a mandatory minimum prison sentence of 15 years and a maximum sentence of life imprisonment. *Id*. ¶ 2.

For purposes of determining Parnell's statutory penalty and imprisonment range under the then-mandatory federal sentencing guidelines, the parties stipulated that Parnell's base offense level would be 33 if the Court determined that he was an "armed career criminal." *Plea*

*Agreement* ¶ 6(A). The Government agreed to recommend a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b) at the time of sentencing, and a two-level reduction for substantial assistance under U.S.S.G. § 5K1.1 should Parnell cooperate fully with the Government in the meantime. *Id*. ¶¶ 7, 13, respectively.

Parnell expressly waived his right to appeal or collaterally attack his conviction or sentence, with the following limited exceptions. *Plea Agreement* ¶ 20. He reserved the right to appeal any sentence that exceeded the statutory maximum or represented an upward departure from the sentencing guidelines range deemed most applicable by the Court. *Id*. He also reserved the right to raise claims of ineffective assistance of counsel and prosecutorial misconduct collaterally or on appeal. *Id*. Parnell acknowledged that the Plea Agreement set forth the full and complete agreement between the parties, that his guilty plea was freely and voluntarily made, and that he was fully satisfied with counsel's assistance. *Id*. ¶ 18.

Pursuant to Fed. R. Crim. P. 11(b) and the "core concerns" articulated by the Sixth Circuit Court of Appeals in *United States v. Debusk*, 976 F.2d 300, 306 (6th Cir. 1992), the Court carefully reviewed the terms of the Plea Agreement with Parnell at the change of plea hearing. *See generally Draft Change of Plea* ("COP") *Hr'g Tr.*, at 2-25.[2] The Court explained the Government's burden of proof should Parnell proceed to trial, as well as his constitutional trial rights. *Id*. at 14-18, 19-20. The Court also explained his appeal rights and the effect of his waiver:

> THE COURT: Okay. Then I want to cover with you what is in paragraph 20, I guess the last paragraph of your plea agreement. You understand, sir, that

---

[2]The Court has ordered final copies of all draft transcripts cited in this Memorandum of Opinion and Order, which shall be filed.

3

> ordinarily, even with a plea of guilty, you would have the right to appeal your conviction and sentence, and you would have the right to file what we call post-conviction motions if you felt that your constitutional rights had been violated in any way by the conviction or plea or sentence. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: What you're doing in paragraph 20 is waiving or giving up, first, your right to appeal the conviction and sentence and, second, your right to file any of these post-conviction motions, with the following limited exceptions. First, if I should sentence you in excess of the statutory maximum – that's not going to happen, I can read the law – but if I would make an error, that would make sure you could certainly challenge it; and, second, if I would determine that this was an unusual, an atypical case under the guidelines that warranted a departure, an upward departure from those guideline ranges that we were talking about, you could challenge that.
>
> But put another way, if I sentence you within the guideline range and don't exceed the statutory maximum, you could not appeal. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And second, the only post-conviction constitutional challenges you could bring would be if you felt you had received ineffective assistance of counsel or if you felt there had been government misconduct in this case. You are giving up all other post-conviction challenges. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

*Draft COP Hr'g Tr*. at 19-20. Parnell affirmed that he had discussed the Plea Agreement with his lawyer, and that he had the opportunity to ask him any questions he had about the Agreement. *Id.* at 5-6. The Court confirmed that Parnell had no understandings or agreements outside those set forth in the Plea Agreement, *id*. at 18 , and that he was satisfied with his lawyer's representation, *id*. at 6, 24. The Court concluded that Parnell was competent to enter a guilty plea, that the guilty plea had a factual basis, that Parnell understood the trial and

4

appeal rights he was waiving, and that Parnell came to the decision to enter a guilty plea knowingly and voluntarily. *Id.* at 20-22.

At the sentencing held on January 6, 2005, the Court determined that Parnell was not an armed career criminal; therefore, his base offense level was 24 under U.S.S.G. § 2K2.1(a)(2). *Draft Sentencing Hr'g Tr.*, at 16-17. Since Parnell possessed a firearm in connection with a prior felony offense, a four-level enhancement was applied. *Id.* at 17-18. Parnell was granted a two-level reduction for acceptance of responsibility and a one-level reduction for a timely guilty plea. *Id.* at 18-19. The Court also granted the Government's motion for a two-level reduction under U.S.S.G. § 5K1.1 for substantial assistance, placing Parnell at an adjusted offense level of 23. *Id.* at 19. Having determined that Parnell was in Criminal History Category III, the Court sentenced Parnell to 64 months' imprisonment, the midpoint of the applicable guidelines range (i.e., 57 to 71 months). *Id.* at 20, 41.

Parnell did not appeal his conviction or sentence. However, on January 9, 2005, Parnell filed the instant § 2255 Motion. *Motion,* at 4. Parnell challenges the constitutionality of his conviction on three bases: (1) his counsel was ineffective for failing to file an appeal on his behalf; (2) his counsel was ineffective for failing to challenge the Government's lack of evidence concerning whether the gun he possessed at the time of his arrest was an "antique firearm;" and (3) the Government engaged in prosecutorial misconduct by failing to provide the manufacture date of the firearm "as [allegedly] ordered by the Court." *Id*. at 5.

**II.**

Under 28 U.S.C. § 2255, a federal district court may grant relief to a prisoner in custody under a sentence imposed by that court "upon the ground that the sentence was imposed

5

in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." *Id.* To prevail on a § 2255 claim, the petitioner must show a fundamental defect in the proceedings "which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Nagi v. United States,* 90 F.3d 130, 133-34 (6th Cir. 1996) (quoting *Gall v. United States,* 21 F.3d 107, 109 (6th Cir. 1994)).

Rule 4(b) of the Rules Governing Section 2255 Proceedings requires the judge to whom it is assigned to promptly make a preliminary examination of the petition, records and transcripts relating to the judgment under attack. Rule 4(b) provides in pertinent part as follows:

> If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified. Otherwise, the judge shall order the United States Attorney to file an answer or other pleading within the period of time fixed by the court or to take such other action as the judge deems appropriate.

*Id.* The Court has promptly examined the § 2255 Motion, the record in the underlying criminal case, and the case law and finds that it plainly appears that Parnell is not entitled to relief in the district court for the following reasons.

### III.

### A.

Parnell argues that counsel was ineffective for failing to file an appeal on his behalf. Claims of ineffective assistance of counsel are analyzed under the standard enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, Parnell must establish two elements: (1) counsel's

6

performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that but for counsel's deficiency, the outcome of the proceedings would have been different. *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 689). A review of counsel's performance must be highly deferential and requires the Court to "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Strickland,* 466 U.S. at 689)). As to the second "prejudice" prong, the Supreme Court has stated that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694).

Parnell cannot show that counsel was ineffective for failing to file an appeal on Parnell's behalf because Parnell expressly waived his right to appeal his conviction or sentence unless the sentence exceeded the statutory maximum or represented an upward departure from the applicable sentencing guidelines range. *Plea Agreement* ¶ 20. Since his sentence was below the statutory maximum and involved no upward departure, he had no basis upon which to file an appeal. Furthermore, as shown in detail, *supra*, at 4, the Court explained Parnell's appeal rights to him at the change of plea hearing and confirmed that he voluntarily and knowingly waived those rights with the aforementioned exceptions. Because Parnell waived his right to appeal his conviction on all but those limited grounds, he cannot show that counsel was deficient for failing to file an appeal, or that he was prejudiced thereby. *See, e.g., United States v. McGilvery,* 403 F.3d 361, 362-63 (6th Cir. 2005) (enforcing appellate-waiver provision in the plea agreement where the district court ascertained that the defendant understood that provision); *United States*

*v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004) (holding the same). Accordingly, this claim has no merit.

**B.**

Next, Parnell contends that counsel was ineffective for failing to challenge the Government's lack of evidence concerning whether the gun he possessed at the time of his arrest was an "antique firearm." This claim is equally meritless.

In Count 1, Parnell was charged with possessing a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). For purposes of § 922(g),

> [t]he term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3). As is relevant here, an "antique firearm" is defined as any firearm "manufactured in or before 1898." 18 U.S.C. § 921(a)(16). The Sixth Circuit has long held that the antique firearm exception set forth in § 921(a) is an affirmative defense which must be raised by the defendant. *United States v. Smith*, 981 F.2d 887, 891-92 (6th Cir.1992). In *Smith*, the Sixth Circuit explained that, "where a statutory exception creates an affirmative defense, the ultimate burden of persuasion remains with the prosecution; however, the defendant has the burden of going forward with sufficient evidence to raise the exception as an issue." *Smith*, 981 F.2d at 891. Based on this Sixth Circuit precedent, the Court made clear to Parnell that if he wished to rely on the "antique firearm" exception, <u>he</u> had the initial burden of producing sufficient evidence to raise the exception as an affirmative defense – not the Government. *See, e.g., Draft May 19, 2004 Hr'g Tr.* at 3-4. Because the burden of production was on Parnell, he is

8

unable to show that counsel was ineffective for failing to object to the Government's lack of evidence on this issue.

The record shows that the Court gave Parnell numerous continuances to allow his counsel all the time he needed to determine the manufacture date of the gun. The question of whether Parnell possessed an antique firearm was first discussed at the detention hearing held on November 12, 2003. *See ECF No. 9*. Defense counsel cross-examined the investigating agent (William Hall from the Bureau of Alcohol, Tobacco and Firearms) regarding the findings he made in the case report. *Id*. at 12-14. Specifically, she asked him how he determined that the gun was not antique. *Id*. at 13-14. Agent Hall responded that he consulted with the arms technology branch of the ATF in Washington, D.C. which advised him that the serial number of the gun was indicative of a gun that was not an antique. *Id*. at 14. He also stated that he believed the gun was manufactured after 1901, but admitted that he was not an expert on the subject of Colt firearms. *Id.; see also ECF No. 27, Ex. 2*. At the conclusion of the hearing, the Court scheduled a pretrial conference (and change-of-plea deadline) for December 19, 2003 and a trial for January 12, 2004. *Id*. at 35-36; *ECF No. 5*.

At the December 19, 2003 conference, the Court extended the change of plea deadline to January 12, 2004 and postponed the final pretrial conference and trial dates. *See ECF No. 11* (Minutes of Proceeding).

At the January 12, 2004 pretrial conference, the Court granted Parnell's request to have the firearm in question examined by an expert. *See ECF No. 13* (Minutes of Proceeding).

At the conclusion of a suppression hearing held on March 12, 2004, the Court scheduled a pretrial conference for April 15, 2004. *See ECF No. 21* (Minutes of Proceeding).

9

Three days prior to the April 15 conference, Parnell filed a Memorandum of Law wherein he argued that it was the Government's burden to prove that he knew that the characteristics of the instrument underlying the firearms charges rendered the instrument a statutory firearm, citing *Staples v. United States*, 511 U.S. 600 (1994); *United States v. Reed*, 114 F.3d 1053 (10th Cir. 1997); *United States v. Capps*, 77 F.3d 350 (10th Cir. 1996). Moreover,

> Given the physical characteristics of the instrument involved herein and the evidence disclosed by the government, the government will not be able to prove, beyond a reasonable doubt, that Mr. Parnell knew or had reason to know the Colt .45 caliber six-shot revolver was a "firearm" as that term is defined by 18 U.S.C. § 921. Rather, the evidence demonstrates the instrument was reasonably believed to be an antique. The "antique firearm" exception is an affirmative defense to a federal firearm charge because an instrument cannot form the basis for a federal firearm conviction if the instrument employed cannot meet the definition of a statutory "firearm." United States v. Smith, 981 F.2d 887, 891-92 (1992). Thus, even if the instrument does not fully meet the antique firearm exception, the government cannot prove Mr. Parnell knew the instrument fell within the statutory definition of a firearm if Mr. Parnell reasonably believed under the circumstances that the instrument was an antique firearm and not a statutory firearm.

*ECF No. 25*, at 3.

At the April 15, 2004 conference, the Court directed the Government to file a response to Parnell's Memorandum of Law by April 30, 2004. *See ECF No. 26* (Minutes of Proceeding). The Court also scheduled a pretrial conference for May 19, 2004 and extended the change-of-plea deadline to that date to permit the parties to research the manufacture date of the gun. *Id*.

At the May 19, 2004 conference, Parnell's counsel presented the Court with a copy of a letter dated May 13, 2004 from Colt Manufacturing to Parnell's expert, Larry Dehus. *Draft May 19, 2004 Hr'g Tr*. at 1-2; *see also ECF No. 33, Ex. A*. The letter stated that this particular Colt firearm, along with 350 other firearms, was shipped from Colt to Captain A.

10

Benoit in Montreal, Canada on April 3, 1900. *Id*. The Court noted that, while this fact was interesting, it was not necessarily dispositive of the question of whether the firearm was in fact an antique. *Id*. at 2. The Court was not sure that Parnell's letter rebutted the Book of Colt Firearms upon which the ATF relied for its position that the firearm was manufactured in 1900. *Id*.; *see also ECF No. 27, Ex. 2*. The Court also informed Parnell that, based on the case law, the antique firearm exception was an affirmative defense for which he had the initial burden of production at trial. *Draft May 19, 2004 Hr'g Tr*. at 3-4. Further, his state of mind (i.e., whether the defendant reasonably believed the gun was an antique firearm) was irrelevant to this case. *Id*. The Court granted counsel's request for 30 more days to further research the manufacture date of the gun. *Id*. at 14; *see also ECF No. 31* (Minutes of Proceeding).

At a hearing held on July 1, 2004, counsel for the Government advised the Court and defense counsel that it had obtained an expert who would testify that the gun in question was manufactured after 1898, and that he expected to receive the expert's report shortly. *Draft July 1 Hr'g Tr*. at 1. The Court scheduled a pretrial conference for July 21, 2004 to give Parnell time to review the Government expert's report with his counsel and to decide whether or not he wished to change his plea. *Id*. at 2; *see also ECF No. 35* (Minutes of Proceeding).

At the July 21, 2004 conference, the Court granted counsel's request for more time to discuss a possible change of plea, and scheduled a hearing for July 28, 2004. *Draft July 21, 2004 Hr'g Tr*. at 1-4; *see also ECF No. 44* (Minutes of Proceeding). The Court subsequently re-scheduled the July 28 hearing date for August 4, 2004 based on counsel's representation that the parties were close to executing a plea agreement.

At the August 4, 2004 conference, however, counsel for Parnell advised the Court that Parnell did not wish to change his plea, so the Court had the Government put its last plea offer on the record. *Draft August 4, 2004 Hr'g Tr.*, at 1-9. Based on Parnell's equivocation, the Court decided to recess the hearing for 24 hours to allow Mr. Parnell time to discuss with counsel and his family whether he wanted to go to trial or change his plea. *Id*. at 9-13. The Government agreed to leave its last plea offer on the table until that time. *Id*. At the hearing on August 5, 2004, Parnell asserted his desire to proceed to trial, and the Court scheduled a trial for September 20, 2004. *Id*. at 13-17; *see also ECF Nos. 50-52* (Minutes of Proceedings).

Shortly thereafter, Parnell's counsel advised the Court that Parnell wished to change his plea. Accordingly, the Court held a change of plea hearing on September 1, 2004. *See generally Draft September 1, 2004 Hr'g Tr*. at 1-27; *see also ECF No. 54* (Minutes of Proceeding). At that hearing, Parnell's counsel summarized his findings:

> Your Honor, if I may, at this point in time Mr. Parnell is prepared to tender a plea, but I did tell him that I would put on the record certain facts that I think are important. I don't think they are necessary for the plea agreement, but as the Court is aware of the history of this case, that is, that the only viable defense that Mr. Parnell has had in this case is whether or not the firearm that he possessed was an antique firearm as defined by statute, and, in essence, that would be anything that was manufactured in or before 1898.
>
> The firearm that Mr. Parnell possessed in this case did have a colf Manufacturing Company patent date of 1884 on the barrel of the gun. That's been established in previous proceedings. Also, Mr. Parnell had a belief that the gun had been manufactured sometime during that time period. I've advised him as his attorney that that is not sufficient to raise an affirmative defense; that the gun, in fact, was a firearm.
>
> We have done extensive investigation in this matter, including contacting Colt Manufacturing Company itself, and determined that the earliest record referencing a firearm number 3791 was a shipping record that showed that it was shipped on April 3rd, 1900. There is no record to say when the gun was manufactured. We do also know from Colt that earlier firearms were shipped in

>1898, that being firearm 1 through firearm 249, and that in 1899, firearms 249 through two-thousand-and something were shipped, and that Mr. Parnell's was shipped in 1900, which is April 3rd, 1900.  We have no other way of challenging the manufacture date of the firearm.
>
>And based upon that fact and the fact that he would not be permitted to raise an affirmative defense based upon those facts, I have advised Mr. Parnell that he does not have a defense based upon all of our exhaustive investigation at this point in time, and that the facts were never in dispute in this case, that he did possess the questioned firearm on November 10th, 2002, and he does and he is and has been previously convicted of a felony punishable by greater than a year, and so he is prepared to enter a guilty plea based upon that.
>
>THE COURT:  All right.  What Mr. Bryan has done is shared some of his conversation with you, Mr. Parnell.  Does that change your decision in any way?
>
>THE DEFENDANT:  No, sir.
>
>THE COURT:  All right.  And are you satisfied with the representation your lawyer has given you?
>
>THE DEFENDANT:  Yes, Sir.

*Draft COP Hr'g Tr*. at 23-24.

The record reflects that, despite counsel's best efforts to unearth the manufacture date of the gun, he was simply unable to do so.  Even the Government, with all its resources, was unable to ascertain this date.  The record shows that the Court gave both sides every opportunity to research this issue, and that both sides took advantage of those opportunities.  The fact that defense counsel was, in the end, unsuccessful in this effort says absolutely nothing about his competence.

The record also shows that Parnell's counsel filed numerous cogent, well-written briefs on the firearms issue alone (ECF Nos. 25, 29, 32, 33, 46), not to mention the suppression hearing briefs (ECF Nos. 10, 16, 19) and sentencing briefs (ECF Nos. 43, 56, 60, 66) he filed on

13

Parnell's behalf.  Based on the record, the Court finds that counsel zealously represented Parnell with respect to the firearms issues.

In short, Parnell cannot show that counsel was ineffective for failing to challenge the Government's lack of evidence concerning whether the gun he possessed was an "antique firearm" because, as a matter of law, it was an affirmative defense for which he had the burden of production.  And, in any event, the record shows that counsel vigorously researched the firearms issue and wrote numerous briefs on the case law, but was unable in the end to unearth evidence showing the gun was manufactured prior to 1899.

### C.

Lastly, Parnell brings a prosecutorial misconduct claim.  He argues that his conviction should be reversed because the Government failed to provide the manufacture date of the firearm in question "as ordered by the Court."  *Motion,* at 4.  First, this claim fails because the Court never ordered the Government to provide the manufacture date of the gun.  Second, it was not the Government's burden to prove that the firearm was not antique.  *Smith*, 981 F.2d at 891-92.  As previously explained, the Government had no burden to show that the firearm at issue was not antique unless and until Parnell was able to produce sufficient evidence to raise the issue as an affirmative defense.  *Id*.  Because he was unable to do so, he can show no Government misconduct.

### IV.

The Court's prompt review of the § 2255 Motion, the record in the underlying criminal case and the law plainly dictate that Parnell is entitled to no relief in the district court. Accordingly, the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed

by Terry Parnell **(ECF No. 1)** is hereby **DENIED** and the case is summarily dismissed under Rule 4(b).

    **IT IS SO ORDERED.**

                   */s/Dan Aaron Polster  April 7, 2006*
                    **Dan Aaron Polster**
                    **United States District Judge**